[No. 5164-8-II.   Division Two.   March 30, 1983.]

EQUICO LESSORS, INC., *Appellant,* v. DAVID TOW, ET AL, *Respondents.*

334

*Richard L. Phillips,* for appellant.

*Paul Stritmatter* and *Vincent Retacco,* for respondents.

PETRICH, C.J.—Equico Lessors, Inc. (Equico) appeals from a dismissal of its action against David Tow to enforce an equipment lease.

Jerry Scholes, d/b/a All–Valley Refrigeration, is the manufacturer of a large refrigeration unit which is intended to be installed in fishing vessels. Equico, a leasing company, purchased a unit from Scholes and leased it to David Tow, a commercial fisherman. Tow defaulted on the lease agreement because the unit was defective. In a suit by Equico

against Tow on the lease and a third party action by Tow against Scholes, the trial court dismissed Equico's action against Tow and awarded Tow judgment on his third party action against Scholes. Two issues are raised:

1. Whether a financing lessor, who requests the supplier of the financed equipment to deliver and obtain signatures on the lease documents, thereby clothes the supplier with apparent authority to make express warranties on behalf of the lessor and estops the lessor from denying these warranties where the lease documents expressly disclaim any such warranties.[1]

2. Whether the implied warranties of the Uniform Commercial Code (U.C.C.) apply to those who finance by a lease arrangement the acquisition of equipment selected by the lessee.

We reverse, holding that Scholes, the supplier, did not have apparent authority to warrant the equipment on behalf of Equico, the lessor, and that Equico is not estopped to deny the express warranties. We also hold that

---

[1]The warranty clause provided:

"Lessee acknowledges that lessor is not the manufacturer of the equipment, nor manufacturer's agent, and lessee represents that lessee has selected the equipment leased hereunder based upon lessee's judgment prior to having requested lessor to purchase the same for leasing to lessee, and lessee agrees that the equipment leased hereunder is of a design, size, fitness and capacity selected by lessee and that lessee is satisfied that the same is suitable and fit for its intended purposes. Lessee further agrees that lessor has made and makes no representations or warranties of whatsoever nature, directly or indirectly, expressed or implied, including but not limited to any representations or warranties with respect to suitability, durability, fitness for use and merchantability of any such equipment, the purposes and uses of the lessee or otherwise. Lessee specifically waives all rights to make claim against lessor herein for breach of any warranty of any kind whatsoever and lessor hereby passes to lessee all warranties, if any, received by lessor by virtue of its ownership of the equipment. Lessor shall not be liable to lessee for any loss, damage or expense of any kind or nature caused directly or indirectly by any equipment leased hereunder or for the use or maintenance thereof, or for the failure of operations thereof, or for the repairs, service, or adjustment thereto, or by any delay or failure to provide any thereof, or by any interruption of service or loss of use thereof or for any loss of business or any other damage whatsoever and howsoever caused. No defect or unfitness of the equipment shall relieve lessee of the obligation to pay rent, or any other obligation under this agreement to lessor."

the implied warranties of the U.C.C. do not apply to a financing lessor.

In late July or early August 1978, Tow wanted to purchase a refrigeration unit from Scholes after Scholes expressly warranted that the unit was new, was suitable, and had been used for drag or bottom fishing. The price was $18,500. Scholes played an active role in helping Tow finance the unit. Scholes' salesperson, Richard Casterline, contacted Tow's bank to discuss financing for Tow. When the bank indicated it was reluctant to finance because of the small amount of money involved, Casterline suggested to Tow that he lease the unit from Equico, who would purchase it from Scholes. Tow was Scholes' first customer to enter into this type of financing arrangement with Equico although Equico had on prior occasions contacted Scholes' business to solicit referrals for this type of financing arrangement.

Scholes and Casterline made the necessary arrangements with Equico; Tow had no direct contact with Equico until after he defaulted on the lease. Installation had begun but was incomplete when Casterline and Scholes, equipped with Equiço's preprinted lease forms, visited Tow in person on August 14, 1978. Scholes, who knew Tow was reluctant to sign the lease because Tow was not satisfied with the unit, presented the papers to Tow and told him he must immediately sign the agreement as Scholes had been directed by Equico to remove the piping and refuse to install the unit. There is no evidence in the record that any such directive actually came from Equico; it was clearly a scare tactic to benefit Scholes. Tow signed the lease and an Equico form acknowledging that the unit had been received, installed, and was satisfactory.

Once installed the equipment did not work and, despite repeated efforts, it was not made to work. Eventually Tow refused to make payments and removed the unit from his boat. Casterline testified that six of seven units built by Scholes did not work and that Scholes lied when he told Tow the model was then operating satisfactorily on other

drag fishing vessels.

The trial court found for Tow, concluding that Equico made Scholes its agent in entering into the lease agreement, that Equico was estopped to deny the existence of warranties and that the warranty disclaimers contained in the lease were ineffective. The court reached two important conclusions of law relating to Scholes' authority to bind Equico and the estoppel theory:

> Equico Lessors, Inc., made Jerry Scholes its agent in entering into the lease agreement.

Conclusion of law 3.

> Equico Lessors, Inc., had constructive knowledge of the warranties extended by Jerry Scholes to David Tow as a result of the agency relationship between Equico and Scholes. Equico Lessors, Inc., is estopped to deny the existence of the warranties.

Conclusion of law 4.

We have no quarrel with the conclusion relating to Scholes' agency if it is understood to mean that Equico made Scholes its agent for the sole purpose of hand delivering the lease papers to Tow and securing Tow's signature. We do not think that by virtue of this agency Equico is estopped to deny the warranties for the facts of this case do not establish that Scholes had actual or apparent authority to warrant the equipment on behalf of Equico.

For Tow to have prevailed against Equico, he must have met his burden of proving that Scholes' agency went beyond that of a courier under the theory of apparent authority; neither party contends Scholes had the actual authority to negotiate lease terms.[2] Indeed, under general

---

[2]The trial court in its memorandum decision stated:
Having clothed Scholes with the authority to close the lease transaction, this court is of the opinion that the doctrine of estoppel would preclude Equico from denying the existence of the warranties and provide Tow a defense under the lease.
This language suggests the trial court was operating under two theories: apparent authority and agency by estoppel. Although closely related, courts do recognize a distinction: estoppel is sometimes applied where the technical requirements of apparent authority are not satisfied. *See generally* Restatement (Second) of

rules, authority to negotiate terms is not included in authority to close a lease where the principal prepares and furnishes to the agent a form to be adopted in making the lease contract. *See generally* Restatement (Second) of Agency §§ 26, 49, 58, 68, comment *c* (1958).

█ Apparent authority of an agent can be inferred only from the acts and conduct of the principal. *Lamb v. General Assocs., Inc.,* 60 Wn.2d 623, 374 P.2d 677 (1962); *Accord, Larson v. Bear,* 38 Wn.2d 485, 230 P.2d 610 (1951); Restatement (Second) of Agency § 8 (1958).

> It is also the well–established rule that the apparent or ostensible authority of an agent can be inferred only from acts and conduct of the principal. The extent of an agent's authority cannot be established by his own acts and declarations.
>
> The burden of establishing agency rests upon the one who asserts it. Facts and circumstances are sufficient to establish apparent authority only when a person exercising ordinary prudence, acting in good faith and conversant with business practices and customs, would be misled thereby, and such person has given due regard to such other circumstances as would cause a person of ordinary prudence to make further inquiry.
>
> A principal may be estopped to deny that his agent possesses the authority he assumes to exercise, where the principal knowingly causes or permits him so to act as to justify a third person of ordinarily careful and prudent business habits to believe that he possesses the authority exercised, and avails himself of the benefit of the agent's acts.

(Citations omitted.) *Lamb v. General Assocs., Inc.,* 60 Wn.2d at 627–28. A second principle relevant here is "[k]nowledge by the agent of facts relating to the agency is deemed knowledge by the principal." *Chase v. Beard,* 55 Wn.2d 58, 64, 346 P.2d 315 (1959); Restatement (Second)

---

Agency § 8, comment *d,* § 8B (1958); B. Reuschlein, *Agency and Partnership* §§ 23–25 (1979). *See, e.g., P. Flanigan & Sons, Inc. v. Childs,* 251 Md. 646, 248 A.2d 473, 477 (1968); *Ellis Canning Co. v. Bernstein,* 348 F. Supp. 1212, 1230–31 (D. Colo. 1972). Because the two concepts are nearly synonymous, we will analyze under the apparent authority doctrine only.

of Agency § 273 (1958).

It is undisputed that Equico had no direct contact with Tow; the circumstances surrounding the transaction become important. Although Scholes' refrigeration business was located in Kent, Washington, he discussed the sale in person with Tow in Aberdeen, where Tow's boat was located. Scholes and his salesman viewed Tow's boat and expressly warranted the unit and Tow relied upon their representations and agreed to purchase the unit. It can be gleaned from the record that these express warranties were extended long before Equico was considered as a financing source.

Tow was initially thinking of purchasing the unit outright until it was suggested by his banker and certified public accountant that he lease instead of purchase the unit in case it did not function properly. It was after these discussions that Scholes suggested Equico as a possible source of financing. When Scholes indicated to Tow that Equico was located in Renton or Kent, Tow told Scholes to "[g]o ahead and do it," referring to contacting Equico, because Tow did not want to spend more time researching leasing companies. Within a short period of time Equico became involved in the transaction. Equico supplied Scholes with a preprinted finance lease for Tow's signature. Scholes delivered the forms and the lease was signed. It is apparent from the testimony that the manner of transacting the lease was in large part an effort to convenience the parties. The testimony indicates Tow was mistaken about the legal effect of the lease, it appearing he received erroneous information from his banker and certified public accountant. See discussion *infra*. This was not a misunderstanding created by Equico. Neither Casterline nor Scholes told Tow they represented Equico. The record does not suggest Tow understood the warranties came from Equico.

The whole of this evidence leads to the conclusion Scholes had the actual authority to deliver the documents and procure Tow's signature, and that Equico did not, in any way, manifest to Tow that Scholes had the authority to

negotiate lease terms or vary the terms of the preprinted lease. Knowledge of the express warranties was not imputed to Equico.

As an alternate reason for supporting dismissal of Equico's claim, the trial court determined the implied warranties disclaimers contained in the lease were inadequate under RCW 63.18.010, inferring the lease transaction was subject to implied warranties of U.C.C. article 2. We are satisfied that the implied warranties do not apply to a financing lessor and therefore deem it unnecessary to consider the adequacy of the disclaimer.

The lease agreement between Equico and Tow was a financing tool. This type of equipment lease, referred to as a finance lease, is distinguishable from an operating lease. A finance lease is a transaction in which the lessor is essentially a financier: the financing lessor has no expertise in the type of equipment it leases, the lessee operates and maintains the equipment, and the lessor usually has no contact with the equipment. In contrast, the operating lessors act more like sellers: they include lessors which are in the business of renting personalty and which make available to lessees the use of that personalty for a portion of its useful life. Fraser, *Application of Strict Tort Liability to the Leasing Industry: A Closer Look,* 34 Bus. Law. 605, 609 (1979) (Fraser). The operating lessee relies on the operating lessor's expertise and the lessor is in a position to control the equipment. Generally, leases of the finance type are not subject to the warranty provisions of U.C.C. article 2, although the warranty provisions have been extended to operating leases. *See, e.g., World Wide Lease, Inc. v. Grobschmit,* 21 Wn. App. 537, 586 P.2d 889 (1978), *review denied,* 91 Wn.2d 1023 (1979) (lease was a financing tool where an ice machine vendor sold the machine to World Wide Lease, Inc., who in turn leased it to the intended customer, a grocery store. The warranties ran from the vendor through the lessor to the lessee); *cf. Baker v. Seattle,* 79 Wn.2d 198, 484 P.2d 405 (1971) (golf cart lessor could not exclude himself from liability with an inconspicuous dis-

claimer). *See generally* Fraser; 1 R. Anderson, *Uniform Commercial Code* § 2–102:11 (3d ed. 1981); Hawkland, *The Impact of the Uniform Commercial Code on Equipment Leasing,* 1972 U. Ill. L.F. 446; Mooney, *Personal Property Leasing: A Challenge,* 36 Bus. Law. 1605, 1618–21 (1981); *Walter E. Heller & Co. v. Convalescent Home,* 49 Ill. App. 3d 213, 365 N.E.2d 1285 (1977); Annot., 48 A.L.R.3d 668 (1973).

In this case, Tow selected the equipment before Equico was contacted. Equico purchased the equipment for the purpose of helping Tow finance the unit, and otherwise would not have purchased it. Equico does not purchase equipment without intending to lease it. Tow did not think he discussed his needs with Equico and did not negotiate the price of the equipment with Equico, nor did Equico ever see the equipment. This evidence clearly demonstrates Equico was not acting like a seller, the transaction was a finance lease,[3] and therefore the implied warranty provisions of U.C.C. article 2 do not apply.

Equico has requested attorneys fees on appeal. The lease provides for costs and attorneys fees associated with enforcement of the lease. Equico is entitled to these costs for the appeal. *See* RAP 18.1.

Judgment dismissing Equico's claim is reversed and the case is remanded for further proceedings to determine the validity of Equico's claim and for a determination of an appropriate award of attorneys fees on this appeal.

REED and WORSWICK, JJ., concur.

---

[3]We are aware the trial court did not reach this issue in its findings of fact and conclusions of law, although Equico stated its theory to the trial court. The evidence, most of which is undisputed, overwhelmingly indicates this was a finance lease. Therefore, we hold it to be such as a matter of law.