[No. 10700–3–I.   Division One.   July 8, 1985.]

DOROTHY PILLING, *Appellant,* v. EASTERN AND PACIFIC
ENTERPRISES TRUST, *Defendant,* M. J. STEWART,
ET AL, *Respondents.*

*Robben & Blauert* and *Roger E. Rahlfs,* for appellant.

*M. J. Stewart* and *Weldon Thompson,* pro se, and *James S. Munn,* for respondents Hernandez.

SCHOLFIELD, A.C.J.—Dorothy Pilling appeals from that portion of a judgment dismissing her claims against Renton Realty, its broker, Weldon Thompson, and its salesman, Arnold Hernandez. She claims the trial court erred by failing to find that the realtors breached their fiduciary duty to her. We affirm.

On January 13, 1977, Dorothy Pilling listed her home for sale with Benton Realty, through its salesperson, Pauline Courey. The listing agreement provided for a multiple listing of the property through Real Estate Multiple, Inc. (REMI), of which respondent Renton Realty was a member. Arnold Hernandez, a real estate salesman employed by Renton Realty, noticed Pilling's listing in REMI and brought it to the attention of one Myron J. Stewart. Stewart owned Renton Mortgage and Escrow, Inc., and Eastern and Pacific Enterprises Trust, among other enterprises. Renton Realty, through its broker, Weldon Thompson, had assisted Stewart in previous real estate transactions.

Hernandez and Stewart viewed Pilling's property, and Hernandez informed Pilling that Stewart, on behalf of Eastern and Pacific Enterprises Trust, wanted to make an offer to purchase. Pilling directed Hernandez to discuss the offer with her son–in–law, Ronald Goodmansen, who was the branch manager of a mutual savings bank and an experienced mortgage loan officer.

After Hernandez and Stewart met with Goodmansen to discuss the transaction, Hernandez drafted two earnest money agreements, one for the improved and another for the unimproved portions of Pilling's property. Hernandez also typed, at Stewart's direction, separate "closing instructions" for each purchase and attached them to the earnest money agreements. The "closing instructions" for the sale of the unimproved property required Pilling to subordinate her security interest in that property to a security for financing necessary to construct a duplex on the property. Hernandez delivered these documents to Pilling and Goodmansen, who reviewed them and proposed a change in the payment terms. The change was accepted by Stewart, and the documents were signed on March 6, 1977. Although the earnest money agreement did not specify the method of sale, a blank standard form real estate contract accompanied the documents. Both Pilling and Goodmansen assumed that a real estate contract was to be the method of sale.

On March 5, 1977, Edwin G. Stevenson executed a deed of trust, acting as "Trustee for Eastern Pacific Enterprises Trust", in favor of Wright's Business Services, Inc., as beneficiary. This deed of trust, describing Pilling's improved property, secured a promissory note for $23,000 and was recorded on April 4, 1977. This was 7 days prior to the closing, which did not occur until April 11, 1977. On or about March 31, Wright assigned the note and deed of trust to Renton Mortgage and Escrow.

The sale closing on April 11 was held in the offices of Renton Mortgage and Escrow. Pilling was accompanied at the closing by her listing real estate agent, Pauline Courey, of Benton Realty. Goodmansen, Stewart, Thompson and Hernandez were not present. Instead of executing a real estate contract, Pilling signed two warranty deeds, and took back deeds of trust. She later testified that she did not understand what a deed of trust was. The next day after the closing, April 12, Stewart, acting on behalf of Renton Mortgage and Escrow, assigned the note and deed of trust

on Pilling's improved property to Daniel Edelson and his wife. This assignment was recorded April 18. Stewart and/ or Renton Mortgage received $20,682 from the Edelsons for the note and deed of trust. Pilling's deeds of trust were recorded May 24, without her knowing the improved portion of her property was encumbered by the deed of trust sold to the Edelsons.

In June 1977, Pilling brought an action to void the sale to Eastern and Pacific Enterprises and to cancel the deeds of trust involving her property. She also sought damages from Stewart and Renton Realty. In a separate action, the Edelsons brought a third party complaint against Pilling to foreclose the deed of trust they held on Pilling's property. The two actions were consolidated, and Pilling was allowed to amend her complaint to quiet title in her name against the Edelsons and to join Arnold Hernandez as a defendant in her claim for damages. The matter went to trial in May 1981.

At the close of Pilling's case, the trial court dismissed the claims against Thompson, Hernandez and Renton Realty. The trial court ordered foreclosure of the deed of trust against the improved portion of Pilling's property and quieted title to the unimproved portion in Pilling. Foreclosure of the Edelsons' deed of trust was for the amount of $34,446.48, and the trial court gave Pilling a judgment against Stewart for the same amount.[1]

In its written findings of fact and conclusions of law, the trial court concluded that Hernandez neither breached a duty to Pilling nor made any material misrepresentation of fact to her. The trial court based this conclusion, in part, on its factual finding that Goodmansen was aware that Stewart owned Renton Mortgage and Escrow.

On appeal, Pilling challenges these findings of fact and

---

[1]While this appeal was pending, the Edelsons and Pilling reached a settlement in which Pilling paid the Edelsons $30,000 to satisfy their claims against her property. The only issue remaining on appeal is the propriety of the trial court's dismissal of Pilling's claims against Thompson, Hernandez and Renton Realty. Of these respondents, only Hernandez filed a brief in this court.

conclusions of law, asserting that they are not supported by the evidence. She argues that Thompson and Hernandez owed her a fiduciary duty of care and loyalty and breached this duty by: (1) failing to disclose to her that Stewart owned Renton Mortgage and Escrow; (2) failing to monitor the closing of the sale in order to assure it was done in accordance with the contract; and (3) failing to disclose Stewart's plan to subordinate her security interest on the improved portion of the property.

### DUTY TO DISCLOSE

The Washington Supreme Court has held that the real estate brokerage firm with whom property is listed for sale becomes the agent of the seller for the purpose of finding a purchaser; from this agency relationship arises the duty and the obligation on the part of the listing broker, as well as on the part of any subagents, to exercise the utmost good faith and fidelity toward the seller in all matters falling within the scope of employment. *Mersky v. Multiple Listing Bur. of Olympia, Inc.,* 73 Wn.2d 225, 228, 437 P.2d 897 (1968).

The broker's duty of good faith includes the duty of full disclosure, requiring that the agent:

> make, in all instances, a full, fair, and timely disclosure to the principal of all facts within the knowledge or coming to the attention of the broker or his subagents which are, or may be, material in connection with the matter for which the broker is employed, and which might affect the principal's rights and interests or influence his actions.

(Citations omitted.) *Mersky,* at 229.

■ Hernandez concedes that this duty exists, but contends that the duty applies only to a listing broker. This contention is without merit. In a multiple listing situation, the selling broker is an authorized subagent of the listing broker. *Frisell v. Newman,* 71 Wn.2d 520, 529, 429 P.2d 864 (1967). Thus, a selling agent in a multiple listing system also owes the seller the same duties owed by the listing broker. *Frisell v. Newman, supra.*

■ Hernandez contends there was no violation of his duties to Pilling because Pilling did not rely on Hernandez

or Renton Realty, but rather, on her son–in–law, Good-mansen. Pilling's lack of reliance on Renton Realty did not relieve the company, Thompson, or Hernandez from their obligation to act in her best interest:

It is of no consequence, in this regard, that the broker may be able to show that the breach of his duty of full disclosure and undivided loyalty did not involve intentional or deliberate fraud, or did not result in injury to the principal, or did not materially affect the principal's ultimate decision in the transaction. . . .

*Mersky*, at 231; *see also Ross v. Perelli*, 13 Wn. App. 944, 947, 538 P.2d 834 (1975).

■ The trial court entered findings that Goodmansen was Pilling's agent in the transaction (finding of fact 7) and was aware Stewart was the owner of Renton Mortgage and Escrow, Inc. (findings of fact 7 and 11). Pilling assigns error to these findings, urging they are not supported by substantial evidence. Stewart testified on direct examination by Pilling's attorney that he told Goodmansen in a direct conversation that he owned a "controlling interest" in the company. This is substantial evidence the trial judge was entitled to believe. Knowledge of the agent is imputed by law to the principal. *Equico Lessors, Inc. v. Tow*, 34 Wn. App. 333, 338, 661 P.2d 597 (1983); Restatement (Second) of Agency §§ 9, 272 (1958). Therefore, Goodmansen's knowledge of Stewart's connection to the company is imputed to Pilling.

■ Thompson and Hernandez had a duty of full disclosure and were not relieved of that duty in respect to Stewart's ownership of Renton Mortgage and Escrow simply because Pilling learned of it through another source. An agent is subject to liability for loss caused to the principal by any breach of duty. Restatement (Second) of Agency § 401 (1958). The trial court found on substantial evidence that Goodmansen's knowledge was imputed to Pilling and that any failure to communicate by Hernandez or Thompson was not the cause of her loss.

Pilling relies on *Mersky v. Multiple Listing Bur. of*

*Olympia, Inc., supra,* and *Ross v. Perelli, supra,* in her claim for damages against Thompson and Hernandez. Neither *Mersky* nor *Perelli,* however, dealt with the issue of damages; they are cases wherein the seller was found not liable for the real estate commission because of a breach of the duty of full disclosure. In each case, the court held that, as a matter of public policy, the commission would be denied an agent who breached the fiduciary duty to disclose. This was a remedy imposed by the court regardless of the materiality of the undisclosed fact and regardless of whether the breach resulted in injury.

Here, Pilling does not seek return of the commission, but recovery of substantial damages arising out of the fraudulent conduct of Stewart. We find no cases in this field, however, where an agent has been held liable for substantial damages for breach of the fiduciary relationship where the undisclosed fact was known to the principal and therefore could not operate as the cause of the damages claimed.

Pilling's attack against finding of fact 11 and her argument that the alleged failure to disclose Stewart's relationship to Renton Mortgage and Escrow was a proximate cause of her damages must be rejected.

SCOPE OF AGENCY

█ Pilling next argues Thompson and Hernandez breached their fiduciary duty by failing to monitor the closing of the transaction in order to assure it was done in accordance with the contract. Implicit in such an argument is the contention that the agency relationship between the seller and the listing broker or his subagents extends to the date of closing. The only authority cited by Pilling for this contention is *Cogan v. Kidder, Mathews & Segner, Inc.,* 97 Wn.2d 658, 648 P.2d 875 (1982). *Cogan* does not support this contention. In *Cogan,* the court answered Kidder's contention that its agency relationship with Cogan ended with the signing of the earnest money agreement by pointing out that the earnest money included language which conditioned liability for a commission on a *closing* of the

sale. This factor distinguishes *Cogan* from the ordinary case, and this case, where the commission is earned when the broker produces a ready, able and willing buyer who signs a contract acceptable to the seller. Annot., 2 A.L.R.3d 1119, 1128 (1965). The *Cogan* court expressly relied upon the requirement that the sale close before the commission was earned in extending the agency relationship to the date of closing.

The scope of the agency between the seller and the broker is defined by the agent's purpose, which is to find a purchaser. *Mersky v. Multiple Listing Bur. of Olympia, Inc., supra* at 228. In *Dryden v. Vincent D. Miller, Inc.,* 56 Wn.2d 657, 354 P.2d 900 (1960), the trial court found breach of a fiduciary duty by the defendant real estate broker for failing to advise the seller of adverse information learned by the broker after the seller and buyer signed the earnest money agreement. The court held this fact did not justify a forfeiture of the commission, which was earned when the earnest money was signed.

From these authorities, we conclude that there is no legal basis for asserting that the seller–broker agency relationship extends beyond the time when the broker has earned his commission. It follows, and we so hold, that there was no duty upon Thompson or Hernandez to attend the closing or to perform services for Pilling during the closing.

■ Pilling also contends that Hernandez and Thompson had a duty to disclose to her Stewart's plan to subordinate her security interest on the improved portion of her property. This contention presupposes that Thompson or Hernandez had knowledge of Stewart's plans. A finding of fact to that effect is a necessary predicate to imposing the duty. Pilling had the burden of proof on this issue. The absence of a finding on a material issue is presumptively a negative finding entered against the party with the burden of proof. *Golberg v. Sanglier,* 96 Wn.2d 874, 639 P.2d 1347, 647 P.2d 489 (1982). We find no merit in this assignment.

Judgment affirmed.

RINGOLD and WEBSTER, JJ., concur.

Review denied by Supreme Court September 20, 1985.