**Barbara PATTERSON et vir., Plaintiffs,**

v.

**WINTHROP–BREON LABORATORIES, Defendant.**

**No. C–86–771–RJM.**

United States District Court, E.D. Washington.

Nov. 19, 1986.

As Modified May 4, 1987.

Dale M. Foreman, Jardine, Foreman & Appel, Wenatchee, Wash., for plaintiffs.

Thomas V. Harris, Sidney R. Snyder, Jr., Merrick, Hofstedt & Lindsey, Seattle, Wash., for defendant.

## ORDER

ROBERT J. McNICHOLS, Chief Judge.

On July 30, 1986 plaintiff, a Washington resident, filed this action in Chelan County Superior Court naming only Winthrop-Breon Laboratories [WBL], a foreign corporation, as a defendant.[1] On that same date, plaintiff entered into a stipulation with a local hospital, Central Washington Health Services [CWHS]. The gist of that agreement was that plaintiff would be given a period of time in which to conduct independent tests on a drug manufactured by WBL and administered to her while under the care of CWHS before deciding whether to join the hospital. In exchange, CWHS agreed to waive applicability of Washington's 1985 Tort Reform Act.[2] The suit was not actually commenced until September 2, 1986 when the manufacturer was served.[3] A timely removal petition followed. 28 U.S.C. §§ 1332(a)(1) & 1441(a).

■ On October 17, 1986 plaintiff brought a motion for leave to amend the complaint by joining CWHS based on allegations of malpractice and failure to inform. No opposing memorandum has been filed. The ramifications of granting the instant motion call into question the Court's continuing jurisdiction over this action. Thus, notwithstanding the lack of any opposition by WBL, the Court's duty to examine its own jurisdiction *sua sponte* requires the following analysis. *See generally, Othman v. Globe Indem. Co.*, 759 F.2d 1458, 1460 n. 2 (9th Cir.1985).

■ The Ninth Circuit has consistently embraced a liberal approach in allowing such amendment. *See, e.g., Desert Empire Bank v. Ins. Co. of North America*, 623

1. The complaint does not bear a file stamp. It was, however, signed on July 30, 1986 and in all likelihood was filed at that time as well. See note 2, *infra*.

2. The 1985 Tort Reform Act became fully effective as of August 1, 1986. The precise provisions are not important to resolution of this matter. Suffice it to say that the Act is decidedly defense-oriented. To give some indication of how dramatically the Act changed the rules of tort litigation, it bears noting that fully 10% of the cases brought in this district thus far this year were filed during the week immediately preceding the effective date of the Act.

3. Unlike federal practice, the Washington rules provide that an action is commenced by service rather than filing. *Wash.Ct.Rules* (CR) 3(a). This is subject to tolling and relationback provisions, which explains why plaintiff could safely wait until September 2, 1986 to actually commence the suit.

F.2d 1371, 1375–76 (9th Cir.1980). In the normal course of events, leave would be granted on an almost perfunctory basis. The facts at bar, however, fall outside of the norm. It may be that it has not occurred to the parties that joinder of a Washington corporation as a defendant would destroy diversity thereby stripping this Court of jurisdiction.[4]

The foregoing scenario surfaces most often where it is readily apparent that a litigant has made up his mind, for whatever reason, that he just plain does not want to be in federal court. It is amazing what creative excuses are tendered for why a plaintiff suddenly "remembers" other defendants who happen to be residents of the same state immediately after an action is removed, or when some scheduling deadline is fast-approaching. That is not the situation here. Plaintiff's counsel took a very responsible position by conducting pre-suit discovery prior to making a decision whether to join CWHS. See Rule 11, *Federal Rules of Civil Procedure.* It is obvious from the terms of the stipulation that it was highly probable that CWHS would at some juncture be named as a defendant unless the test results and other circumstances exculpated the hospital. There is not a shred of indicia in the file that the instant motion arises out of questionable motive, or out of any conscious effort to oust the Court of jurisdiction. *Cf., Syme v. Rowton,* 555 F.Supp. 33, 35 (D.Mont.1982). Quite the contrary, everything in the existing record points to the conclusion that what transpired did so out of total innocence on the part of all concerned.[5]

The threshold dilemma posed by the facts at bar is that there are two distinct lines of . jurisprudential thought at play: one of which holds that any Rule 21 joinder of a non-diverse party, whether permissive or compulsory, will be allowed if otherwise warranted even though to do so would operate to defeat § 1332 jurisdiction; and another which holds that only a Rule 19(b) joinder will be appropriate when the effect would be to oust the Court of jurisdiction. *See generally, Walker v. Union Carbide Corp.,* 630 F.Supp. 275, 277 (D.Maine 1986); *Filippini v. Ford Motor Co.,* 110 F.R.D. 131, 137 (N.D.Ill.1986): *Cf., Smado v. Crawford Mfg. Co., Div. of Carlsbrook Ind.,* 111 F.R.D. 415, 418 (N.D.Ill.1986) and authorities cited therein. In itself, it is not at all unusual to see two or more disparate lines of authority ostensibly governing a given issue. What is troublesome in the instant case is that those contradictory approaches are arguably both extant in the Ninth Circuit. Perhaps the best mode of demonstrating this tension is to begin by quoting from *Takeda v. Northwestern Nat. Life Ins. Co.,* 765 F.2d 815 (9th Cir. 1985):

> Ordinarily, when removal is proper at the outset, federal jurisdiction is not defeated by later changes or developments in the suit.... But we have recognized an exception to this rule when an indispensable party would destroy diversity.... *Desert Empire Bank v. Insurance Co. of North America,* 623 F.2d 1371, 1374 (9th Cir.1980).

*Id.* at 819 (other citations omitted).

Standing in stark contrast is the following passage from *Desert Empire Bank, supra:*

> We need not decide whether [the joined defendant] was a "person needed for just adjudication" of this litigation, or was a so-called "indispensable" or "necessary" party who should have been joined, if feasible, under Rule 19 of the Federal

---

**4.** In fact, it is relatively certain that such possibility was never contemplated. As set forth in the proposed amended complaint:

> 1.1 This Court has jurisdiction pursuant to the petition of Defendant Winthrop-Breon Laboratories for removal of this action to the Court from the Superior Court of the State of Washington in and for Chelan County pursuant to 28 U.S.C. Sections 1332(a)(1); 1441.

Litigants cannot, of course, confer federal jurisdiction by agreement or otherwise where none exists. *Othman, supra,* 759 F.2d at 1460 n. 2.

**5.** The record does not reflect whether WBL was aware of the stipulation between plaintiff and CWHS prior to removal.

Rules of Civil Procedure.... We conclude that defendant ... was, at the least, a "proper" party to the litigation, and that the district court correctly allowed his joinder pursuant to the provisions for permissive joinder under Rule 20.

623 F.2d at 1374

Obviously, the holding in *Desert Empire Bank*, by its own express terms, is not limited to Rule 19(b) determinations. Arguably, *Takeda* is. So which approach is correct, and more to the point, which approach is this Court compelled to follow? *Desert Empire Bank* has never been overruled. Indeed, it is cited with approval in *Takeda* as a basis for the latter's holding. At a further juncture, an attempt will be made to reconcile these parallel yet disparate approaches. For the moment, however, it will be assumed that *Takeda* has tacitly overruled *Desert Empire Bank*, notwithstanding the former's reliance upon the latter in support of its holding.

*Indispensability under Rule 19(b):*

■■■ The problem may be simply stated. CWHS is no doubt a "proper" party within the meaning of *Desert Empire Bank*. 623 F.2d at 1374. Few would dispute that joinder under Rule 20 would be wholly appropriate given the concurrent, or perhaps alternate, purported liability of WBL and CWHS for a single indivisible injury. Assuming, *arguendo*, that *Takeda* has displaced *Desert Empire Bank*, the initial task is to consider the prospects for finding CWHS to be indispensable.

The logical point of commencement is to consider the plain language of Rule 19(a):

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest

or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party.

It is well-settled that interpretation of federal procedural rules is a matter of federal and not state law, but within the context of a Rule 19 determination, the relationship of the parties cannot be ascertained absent an examination of the applicable substantive law governing their rights and duties *inter se*. The general rule in Washington is that concurrent tortfeasors are not indispensable vis a vis one another. *E.g., Brown v. Fire Protection District,* 21 Wash.App. 886, 892, 586 P.2d 1207 (1978). Here, however, only CWHS is accused of negligence. The three claims asserted against WBL sound in strict liability, and are further predicated on alternative theories of breach of express and implied warranties. The obvious inquiry is to whom these warranties run. With regard to the express warranty, at least, it inures ultimately to the consumer, but the treating physician may well be a necessary conduit in the chain of proving liability. *Terhune v. A.H. Robins Co.,* 90 Wash.2d 9, 577 P.2d 975 (1978):

Where a product is available only on prescription or through the services of a physician, the physician acts as a "learned intermediary" between the manufacturer or seller and the patient. It is his duty to inform himself of the qualities and characteristics of those products which he prescribes for or administers or uses on his patients, and to exercise an independent judgment, taking into account his knowledge of the patient as well as the product. The patient is expected to and, it can be presumed, does place primary reliance upon that judgment. The physician decides what facts should be told to the patient. Thus, if the product is properly labeled and carries the necessary instructions and warnings to fully apprise the physician

of the proper procedures for use and the dangers involved, the manufacturer may reasonably assume that the physician will exercise the informed judgment thereby gained in conjunction with his own independent learning, in the best interest of the patient.

*Id.* at 14, 577 P.2d 975 (footnote omitted).

While *Terhune* was a failure-to-warn case, it has been said that the principles relied upon in that decision are part of the broader precept that "the doctor may be treated as the patient's agent for purposes of establishing reliance upon express warranty." Pruzan, *Prescription Drug Liability in the Context of Washington Law,* 9 Gonz.L.Rev. 707, 714–15 (1974). Where the patient, as principal, is suing a remote warrantor, the existence of an intermediary agent may not necessarily and *per se* require the agent's presence as a party,[6] but at the same time, it is certainly conceivable, if not predictable, that the agent's absence could have a profound impact upon plaintiff's ability to establish her case. For example, suppose that WBL should set up an affirmative defense that warnings furnished the hospital should have contraindicated use of the subject drug in plaintiff's particular situation. Suppose further that the agent who actually received that warning (and who was under a duty to pass on such information to the patient)[7] is not in the action as a party. The net effect could well be for WBL to try the empty chair, and for plaintiff to come up empty-handed because of the physician's knowledge which would be imputed to the patient by reason of their agency relationship. *Cf., Pilling v. Eastern & Pacific Enters.,* 41 Wash.App. 158, 163, 702 P.2d 1232, *rev. denied,* 104 Wash.2d 1014 (1985).

The foregoing scenario is somewhat speculative, given the sparcity of the present record. But as *Takeda* teaches, the relevant inquiry is not what harm the absence of CWHS would certainly cause, but what harm is potentially foreseeable. 765 F.2d at 821. Thus, the Court deems the first prong of Rule 19(a)(1) satisfied in that "in [CWHS's] absence complete relief cannot be accorded among those already parties."[8] Since Rule 19(a)(1) & (2) are disjunctive, the satisfaction of either prong is sufficient to trigger an inquiry into Rule 19(b):

If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a

**6.** This would be an easier analysis were the parties' roles reversed. If the warrantor were suing the principal because of some alleged wrongdoing on the part of the principal's agent, it is a black-letter proposition that the agent would be an indispensable party. *Gibbs v. Hurn,* 1 Wash.App. 483, 484, 462 P.2d 555 (1969).

**7.** *E.g., Smith v. Shannon,* 100 Wash.2d 26, 29–30, 666 P.2d 351 (1983) and authorities cited therein.

**8.** Thus far, the focus has been on plaintiff's inability to obtain complete relief in the absence of joinder. Rule 19(a)(1). The other side of the coin, however, is that CWHS may find itself prejudiced if not joined. Rule 19(a)(2)(i). Suppose for argument's sake that leave to amend were to be denied and plaintiff was thereby forced to pursue her claim against CWHS in state court. Under the facts at issue, can it be seriously doubted that CWHS's first procedural move would be to third-party WBL into the action? The practical import of this observation is two-fold. First, regardless of disposition of the subject motion to amend, there will ultimately be a suit involving all three players and it will proceed in state court. Second, in the context of the instant action, pre–1985 Tort Reform Act substantive law will apply as between plaintiff and WBL since suit was commenced prior to the Act's effective date of August 1, 1986. The same is true should plaintiff find it necessary to bring a state court action against CWHS by virtue of the stipulation entered into *inter se.* However, absent the availability of an equitable tolling argument, any cross-claim subsequently brought by CWHS against WBL for contribution in the state court action would be governed by post-Tort Reform Act provisions; again, by virtue of the Act's effective date of August 1, 1986. Thus, because of the Act's limitations on general damages, it is conceivable that CWHS would not be fully compensated for any liability-over as between CWHS and WBL.

judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

The same factors deemed relevant by the *Takeda* Court as to concepts of "equity and good conscience" seem particularly apropos here:

We have already discussed potential prejudice and the possibility of inadequate relief, two of the Rule 19(b) factors, in the analysis above. The remaining factor of Rule 19(b) deserving attention is the availability of an alternative forum.

State court provides an adequate alternative forum. In state court, all the parties who *should* be joined, *can* be joined. And, unlike a case brought under the federal court's original jurisdiction, the state court is the forum originally chosen by the plaintiffs.

The availability of an alternative forum weighs strongly in favor of remanding this case. This case is still young; discovery apparently has just begun. There would be little duplication of effort if this case were to return to the state court.... On the other hand, judicial efficiency would not be promoted by permitting this case to go forward in federal court, with the possibility that future litigation between plaintiffs and Microdata or between Microdata and Northwest-

ern may be required to settle this controversy fully.

765 F.2d at 821 (emphasis original, footnote and citation omitted).[9]

■ The practical effect of denying plaintiff's motion to amend in the instant case would be to relegate her to her remedies in state court as against CWHS thereby resulting in concurrent state and federal actions which would be largely duplicative of one another in terms of expenditure of effort, cost and time. This exercise in inanity would serve only to promote gross waste and inefficiency at the expense of common sense and fair play.[10] Accordingly, the Court finds that, as to the express warranty claim at least, CWHS is both necessary and indispensable, and that joinder is thus not only warranted, but mandated. *Takeda, supra,* 765 F.2d at 819.[11]

*Joinder under Rule 20:*

■ Thus far, it has been assumed that *Takeda sub silentio* overruled *Desert Empire Bank* notwithstanding the reliance placed on the latter by the former in reaching its holding. See page 480, *supra.* Such is not necessarily the situation. Perhaps the least strained method of reconciling these two cases would be to consider the rule emanating out of *Takeda* as non-restrictive and non-exclusive. That is to say, when *Takeda* "recognize[s] an exception ... when an indispensable party would destroy diversity," 765 F.2d at 819, and then proceeds to cite *Desert Empire Bank* as support for that proposition, what the Court may be saying is that indispensability is a feature which will render joinder not only proper but mandatory. Indispensability, however, goes only to the *necessity* of

**9.** Implicit in the passage quoted is the universally-held modern construction of Rule 19(b) which disregards the express language that a determination of indispensability requires "dismissal" in favor of the ameliorative approach of ordering remand in diversity actions.

**10.** The transaction at issue occurred some eight months ago. In the normal course of events, the commencement of an action would still be a glimmer in the eye of the typical practitioner. The need for immediate filing arose only as a

result of the August 1, 1986 effective date of the Tort Reform Act. See note 2, *supra.*

**11.** *Takeda* merely hints at the mandatory nature of joining indispensable parties. 765 F.2d at 819. The jurisdictional necessity of joinder in these circumstances is more concretely discussed in *Jett v. Zink,* 362 F.2d 723, 726 (5th Cir.), *cert. denied sub nom. Zink v. Pack,* 385 U.S. 987, 87 S.Ct. 600, 17 L.Ed.2d 448 (1966).

allowing joinder even in the face of destroying jurisdiction, and does not impact the rationale set forth in *Desert Empire Bank* which holds that discretionary joinder will also oust a Court of jurisdiction. 623 F.2d at 1375–77.

There are, of course, significant conceptual problems with uttering the terms "discretion" and "jurisdiction" in the same breath. Nonetheless, the continuing vitality of *Desert Empire Bank* is recognized by other courts. *See, e.g., Adorno Enterprises v. Federated Dept. Stores*, 629 F.Supp. 1565, 1572–73 (D.R.I.1986); *McIntyre v. Codman & Shurtleff, Inc.*, 103 F.R.D. 619 (S.D.N.Y.1984).[12] This Court can do no less, given the observation that the decision has never been overruled, and thus remains mandatory precedent throughout the Ninth Circuit.

Accordingly, whether CWHS is deemed an indispensable party as to the express warranty claim asserted against WBL, or whether permissive joinder is warranted, the net result would be the same.

THEREFORE IT IS ORDERED that:

(1) Plaintiff's Motion for Leave to Amend is GRANTED and the Clerk shall file the amended complaint currently lodged.

(2) This action is REMANDED to the Chelan County Superior Court and the Clerk shall take necessary steps to accomplish such transfer.

(3) The parties shall bear their own costs.

---

**12.** *McIntyre*, of course, pre-dated *Takeda*. However, it post-dated *Lopez v. General Motors Corp.*, 697 F.2d 1328, 1332 (9th Cir.1983) which arguably stands for the same proposition as does *Takeda*. The *McIntyre* Court made no mention of *Lopez*. 103 F.R.D. at 621. *Adorno*, which post-dates both *Takeda* and *Lopez*, mentions neither.