[No. 13761-5-II.   Division Two.   April 22, 1992.]

BLAIR PECK, ET AL, *Appellants*, v. BRUCE SIAU, ET AL, *Respondents*.

---

*Peter J. Mozena* and *Mozena & Perry,* for appellants.

*Dennis R. Duggan* and *Horenstein & Duggan, P.S.,* for respondents.

MORGAN, J. — Jeremy Peck and his parents sued the Evergreen School District and Dr. Charles W. Pyne for negligence in hiring, retaining and supervising a teacher, Bruce Siau. The trial court granted summary judgment of dismissal. We affirm.

Bruce Siau was the librarian at Mountain View High School. Dr. Charles Pyne was also a teacher at the school. Jeremy Peck, then 16 years old, was a student at the school who served as an assistant to Siau.

On October 17 and 21, 1986, in secluded areas of the auditorium and library, Siau and Peck engaged in acts of oral sex. When the District learned of these acts, Siau was suspended. He resigned after pleading guilty in superior court to communicating with a minor for immoral purposes.[1]

Peck and his parents commenced an action against Siau, the District and Pyne.[2] They claimed that the District and Pyne negligently hired, retained, or supervised Siau. The District and Pyne moved for summary judgment, and the trial court granted the motion.

Peck does not assert respondeat superior against the District, the apparent reason being that Siau's sexual conduct was not within the scope of his employment. *See Kuehn v. White,* 24 Wn. App. 274, 277, 600 P.2d 679 (1979) (collecting Washington cases); *John R. v. Oakland Unified Sch. Dist.,* 48 Cal. 3d 438, 769 P.2d 948, 256 Cal. Rptr. 766 (1989)

---

[1] In the record before us, the only information describing the acts between Siau and Peck is the statement on plea of guilty that Siau submitted to the superior court.

[2] Siau has defaulted and is not a party on appeal. Peck also sued the Evergreen Education Association for invasion of privacy, but that claim has not yet been resolved at the trial level. The summary judgments in favor of the District and Pyne are before us because the trial court certified them as final pursuant to CR 54(b).

(collecting cases nationally). Thus, he asserts that the District and Pyne are directly, as opposed to vicariously, liable. *See Van Hook v. Anderson*, 64 Wn. App. 353, 824 P.2d 509 (1992).

Peck argues that the District is directly liable due to (1) negligent hiring or retention of Siau, (2) negligent supervision of Peck,[3] and (3) negligent supervision of Siau. He makes the same claims against Pyne. We consider the claims against the District separately, and the claims against Pyne together.

### NEGLIGENT HIRING OR RETENTION

■ ■ The torts of negligent hiring and retention have been generally described as follows:

> [A]n employer may be liable to a third person for the employer's negligence in hiring or retaining a servant who is incompetent or unfit. Such negligence usually consists of hiring or retaining the employee with knowledge of his unfitness, or of failing to use reasonable care to discover it before hiring or retaining him. The theory of these decisions is that such negligence on the part of the employer is a *wrong to such third person, entirely independent of the liability of the employer under the doctrine of respondeat superior.* It is, of course, necessary to establish such negligence as the proximate cause of the damage to the third person, and this requires that the third person must have been injured by some negligent or other wrongful act of the employee so hired.

*Scott v. Blanchet High Sch.*, 50 Wn. App. 37, 43, 747 P.2d 1124 (1987) (quoting 53 Am. Jur. 2d *Master and Servant* § 422 (1970)), *review denied*, 110 Wn.2d 1016 (1988). The difference between negligent hiring and negligent retention is the time at which the employer's negligence occurs. With negligent hiring, it occurs at the time of hiring; with negligent retention, it occurs in the course of employment.

Peck does not have a valid claim against the District for negligent hiring. The record is not clear on when the District hired Siau, but it was at least 7 years before the events in question here. It is undisputed that the District checked

---

[3]The theory that the District negligently supervised Peck is argued in the appellant's brief, though it is not made the subject of a heading therein.

his teaching certification and his background when it hired him. There is no evidence that the District, at the time of hiring, knew or in the exercise of ordinary care should have known that he was unfit for employment as a school librarian. Thus, there is no reasonable inference that the District failed to exercise reasonable care at the time of hiring. *See Scott v. Blanchet High Sch., supra.*

Peck's claim for negligent retention is based on certain events that took place during the 4 months preceding October 1986. The record shows that J.W., a male, graduated from Mountain View in June 1986, at age 19. While at Mountain View, he was a student assistant to Siau. Around graduation, Siau invited J.W. to go on a camping trip. The trip, not sponsored by the school, took place about June 23 or 24. While driving to the campsite, Siau complained of a stiff back and asked J.W. for a back rub. J.W. agreed and rubbed Siau as they drove. J.W. told Siau that he liked to give back rubs and wanted to be a masseur someday. After they had camped and retired to the tent for the night, Siau asked J.W. for another back rub. J.W. again agreed, but during the rub, Siau suggested J.W. "give him a massage lower down."[4] Shocked by the suggestion, J.W. spent the night on the other side of the tent, as far from Siau as possible. J.W. remained fully clothed throughout the night and the next morning demanded to be returned home. Siau complied.

After the camping trip, J.W. told his brother John what had occurred. John had graduated from Mountain View in 1985.

In August 1986, John went to the school to visit Dr. Charles Pyne, one of his former teachers. The fall term had not yet started, but apparently Pyne was preparing for it. After general conversation, John related J.W.'s story about the camping trip and asked Pyne for advice. Pyne suggested

---

[4]The parties have conceded for the purposes of this appeal that Siau was suggesting masturbation.

that if J.W.'s story were true — as Pyne describes it, he emphasized the "if" — J.W. should contact the police. Toward the end of the conversation, John also told Pyne that he "understood" Siau had "made advances" to one D.T.,[5] who apparently had graduated from Mountain View in 1984 or 1985. After the conversation, Pyne did not notify any employees or officials of the District about his conversation with John, nor did he speak with J.W. or Siau about the camping trip.

The question is whether the knowledge that Pyne acquired in his conversation with John should be imputed to the School District.[6] If the answer is no, the District is not liable for negligent retention, *John Doe v. Durtschi*, 110 Idaho 466, 473, 716 P.2d 1238, 60 A.L.R.4th 225, 237-38 (1986) (dictum); *cf.* Annot., *Liability of School Authorities for Hiring or Retaining Incompetent or Otherwise Unsuitable Teacher*, 60 A.L.R.4th 225, 265 (1988), for the record is devoid of any other reason to believe that the District knew or in the exercise of reasonable care should have known that Siau constituted a risk to students.

Neither party cites any case dealing with when, if ever, one teacher's knowledge concerning another teacher's conduct outside of school is imputable to the school district that is their common employer. Nor have we found any such

---

[5]This is according to Pyne. John stated in his affidavit that he did not recollect telling Pyne about Siau making advances to anyone other than his brother. Except for what is stated in the text, the record shows nothing about D.T., about the sources of John's information, or about the circumstances, if any, of Siau's advances to D.T.

[6]Neither party claims that Pyne had a statutory duty to report his conversation with John by virtue of RCW 26.44.030(1). That statute applies only when an abused or neglected child is under 18, and here J.W. was 19. RCW 26.44.020(6). Additionally, it requires a report to law enforcement as opposed to a school district.

Although neither party claims that RCW 26.44.030(1) is directly applicable, the District argues it preempts any common law duty to report, the result being that Pyne had no such duty. Because we resolve the case on other grounds, we need not reach this issue.

cases through our own efforts.[7] Consequently, we revert to general principles.

■ Knowledge of an agent may be imputed to his or her principal. *Pilling v. Eastern & Pac. Enters. Trust*, 41 Wn. App. 158, 163, 702 P.2d 1232, *review denied*, 104 Wn.2d 1014 (1985); *Equico Lessors, Inc. v. Tow*, 34 Wn. App. 333, 338, 661 P.2d 597 (1983); Restatement (Second) of Agency §§ 272, 275 (1958). In order for that to occur, however, the knowledge must relate to the subject matter of the agency, and the agent must have acquired it while acting within the scope of his or her authority. *American Fid. & Cas. Co. v. Backstrom*, 47 Wn.2d 77, 82, 287 P.2d 124 (1955); *Bond v. Weigardt*, 36 Wn.2d 41, 54, 216 P.2d 196 (1950); *L.J. Dowell, Inc. v. United Pac. Cas. Ins. Co.*, 191 Wash. 666, 681, 72 P.2d 296 (1937); 3 Am. Jur. 2d *Agency* § 281 (1986). The purpose of these limitations is to prevent knowledge from being imputed when the agent "would not likely pass such knowledge along." *Roderick Timber Co. v. Willapa Harbor Cedar Prods., Inc.*, 29 Wn. App. 311, 317, 627 P.2d 1352 (1981); *see also Hendricks v. Lake*, 12 Wn. App. 15, 22, 528 P.2d 491, *review denied*, 85 Wn.2d 1004 (1974). These limitations are satisfied if the agent, by virtue of his employment, has a duty to report his knowledge to the principal or to another agent of the principal. Restatement (Second) of Agency §§ 272, 275 comment *c* (1958).

The August 1986 conversation between Pyne and John did not relate to the subject matter of Pyne's agency for the District. The record in this case shows only that Pyne was a teacher. It does not show that he had any supervisory authority over Siau, or that he had any administrative

---

[7]Our own research discloses two cases in which courts, under particular facts, have refused to impute to a school board the knowledge of one employee about another employee's alleged sexual misconduct with a child. *Thelma D. v. Board of Educ.*, 934 F.2d 929, 933-34 (8th Cir. 1991); *Kimpton v. School Dist.*, 138 Wis. 2d 226, 239, 405 N.W.2d 740, 746 (1987). However, these cases may be distinguishable because they arose under 42 U.S.C. § 1983, as opposed to the common law.

responsibilities for the District.[8] His conversation with John related to Siau's conduct with adults outside of school, and Pyne had no way to know whether what John was saying was true. On this evidence, it perhaps would be reasonable to expect that Pyne would do what he did — advise John to advise J.W. to go to the police. On this evidence, however, it is not reasonable to expect that Pyne would report the conversation to officials in the District, nor is it reasonable to infer that his employment imposed upon him a duty to do so. In our opinion, Pyne's knowledge should not be imputed to the District.

## NEGLIGENT SUPERVISION OF PECK

■ When a pupil attends a public school, he or she is subject to the rules and discipline of the school, and the protective custody of the teachers is substituted for that of the parent. *McLeod v. Grant Cy. Sch. Dist. 128*, 42 Wn.2d 316, 319, 320, 255 P.2d 360 (1953); *Briscoe v. School Dist. 123*, 32 Wn.2d 353, 362, 201 P.2d 697 (1949). As a result, a duty is imposed by law on the school district to take certain precautions to protect the pupils in its custody from dangers reasonably to be anticipated. *McLeod*, 42 Wn.2d at 320; *Briscoe*, 32 Wn.2d at 362; *Scott v. Blanchet High Sch.*, 50 Wn. App. at 44. This duty is one of reasonable care, which is to say that the district, as it supervises the pupils within its custody, is required to exercise such care as a reasonably prudent person would exercise under the same or similar circumstances. *Briscoe*, 32 Wn.2d at 362. The basic idea is that a school district has the power to control the conduct of its students while they are in school or engaged in school activities, and with that power goes the responsibility of reasonable supervision.

---

[8]The record does contain a police report in which an officer declares that Pyne was "the head of the Audio Visual Department" and Siau's "team leader". That report does not show that the declarant, the reporting officer, had personal knowledge to support his statements, and as a result it is not cognizable under CR 56(e). Even if it were cognizable, it fails to describe the duties of a department head or team leader, and thus it is not possible to infer that those duties involve supervisory authority over other teachers, or administrative, noninstructional responsibility for students.

A school district's duty requires that it exercise reasonable care to protect students from physical hazards in the school building or on school grounds. *McLeod v. Grant Cy. Sch. Dist., 128,* 42 Wn.2d 316, 322, 323, 255 P.2d 360 (1953) (unlocked darkroom under bleachers available to students for indecent activities); *Gattavara v. Lundin,* 166 Wash. 548, 554, 7 P.2d 958 (1932) (allowing cars to drive across school grounds during school hours); *Rice v. School Dist. 302,* 140 Wash. 189, 248 P. 388 (1926) (live electric wire). More to the point for this case, it also requires that the district exercise reasonable care to protect students from the harmful actions of fellow students, *McLeod,* 42 Wn.2d at 320-21 (forcible rape in unlocked darkroom under bleachers); *Briscoe,* 32 Wn.2d at 362-63 (rough game played by plaintiff and fellow students), a teacher, *John Doe v. Durtschi,* 110 Idaho 466, 471, 716 P.2d 1238, 60 A.L.R.4th 225, 235 (1986) (sexual abuse), or other third persons. Restatement (Second) of Torts §§ 302B, 449 (1965). However, the district is not liable merely because such activities occur. *John Doe v. Durtschi,* 110 Idaho at 473; *Levandoski v. Jackson Cy. Sch. Dist.,* 328 So. 2d 339 (Miss. 1976) (school district not an insurer of the safety of its pupils); Annot., 60 A.L.R.4th 260, 266, 286. Rather, the district will be liable only if the wrongful activities are foreseeable, *McLeod,* at 320-21; *John Doe v. Durtschi,* 110 Idaho at 471-72, 473; *see Sitarek v. Montgomery,* 32 Wn.2d 794, 203 P.2d 1062 (1949), and the activities will be foreseeable only if the district knew or in the exercise of reasonable care should have known of the risk that resulted in their occurrence. *John Doe v. Durtschi,* 110 Idaho at 473; Restatement (Second) of Torts § 320, comment *d* (1965); Restatement (Second) of Agency § 213, comment *d* (1958).

These rules draw us back to the same question already addressed: Did the District know, or in the exercise of reasonable care should it have known, that Siau was a risk to its students? Other than Pyne's conversation with John, there is nothing in the record to so indicate, and for the reasons discussed above, the knowledge Pyne acquired during his conversation with John should not be imputed to the District.

## NEGLIGENT SUPERVISION OF SIAU

■ Restatement (Second) of Torts § 317 describes the liability of an employer for conduct of an employee committed outside the scope of employment. It provides:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
> (a) the servant
> (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
> (ii) is using a chattel of the master, and
> (b) the master
> (i) knows or has reason to know that he has the ability to control his servant, and
> (ii) knows or should know of the necessity and opportunity for exercising such control.

*See also Scott v. Blanchet High Sch.*, 50 Wn. App. at 44; *Focke v. United States*, 597 F. Supp. 1325, 1348 (D. Kan. 1982).

Criterion (b)(ii) brings us back to the same question as before: Did the District know, or in the exercise of reasonable care should it have known, that Siau constituted a risk or danger to its students? The answer is no for the same reasons as before.

## CLAIMS AGAINST PYNE

Like the claims against the District, the claims against Pyne are not well taken. The record does not show that he had any power or duty to hire, fire or supervise Siau.[9] Nor does it show that Peck was ever under his supervision in any way. Thus, Pyne cannot be liable on any of the theories set forth by plaintiffs.

Affirmed.

PETRICH, C.J., and ALEXANDER, J., concur.

Reconsideration denied May 29, 1992.

Review denied at 120 Wn.2d 1005 (1992).

---

[9] See the preceding footnote.