FILED
COURT OF APPEALS
DIVISION II

2014 SEP -3 AM 3: 34

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

|  |  |
|---|---|
| KELSEY BREITUNG, | No. 45123-9-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON; DEPARTMENT OF SOCIAL AND HEALTH SERVICES, and COMMUNITY COUNSELING INSTITUTE, a Washington non-profit corporation, | UNPUBLISHED OPINION |
| Respondent. | |

HUNT, J. — Kelsey Breitung appeals the superior court's granting (1) the Community Counseling Institute's (CCI) motion for summary judgment, dismissing with prejudice her negligent hiring, supervision, and retention claims; and (2) the Department of Social and Health Services' (DSHS) motion for partial summary judgment, dismissing her claims against DSHS. Breitung argues that the superior court erred in (1) dismissing her claims on summary judgment because they involved genuine issues of material fact; (2) ruling that DSHS was not immune from Breitung's negligent investigation claim under RCW 4.24.595(2); (3) ruling that Breitung was judicially estopped from prosecuting her sexual abuse claims, based on her inconsistent statements in 2009; and (4) ruling that the juvenile court's November 2009 ruling was a superseding cause that absolved DSHS and CCI from liability. We affirm.

FACTS

Community Counseling Institute (CCI) is a nonprofit organization offering walk-in drug assessments, outpatient education, and treatment services for individuals with substance abuse problems. Andrew Bernard Phillips, a certified mental health counselor, applied for a job with CCI in 2008; CCI's director, Dr. William H. James, interviewed Phillips, called Phillips' references, and ran a background check on him. This background check revealed only a 1995 conviction for attempted possession of stolen property. CCI hired Phillips as a counselor.

I. BREITUNG'S COUNSELING RELATIONSHIP WITH CCI AND PHILLIPS

In February 2009, when Breitung was 16 years old, she reported to CCI as required by a juvenile court order issued in connection with her misdemeanor assault while intoxicated. CCI assigned Phillips as Breitung's counselor; their counseling relationship began on February 27. Phillips also facilitated his church's "Celebrate Recovery" program, which he encouraged Breitung to join and through which Breitung met Phillips' wife. Clerk's Papers (CP) at 2. Although CCI was aware that Phillips had encouraged other CCI clients to attend Celebrate Recovery, it had never stopped him from doing so. Phillips routinely gave Breitung rides between Celebrate Recovery and her home; he also gave her his cell phone number, telling her she could call him anytime.

In July 2009, Breitung left her parents' home to live with a friend because of issues with her mother. In August, Breitung started living with Rose Beitler[1], her temporary guardian. On August 11, Breitung told Phillips that she had gone to a party with Beitler, where she drank alcohol and had sex with Beitler's 19-year-old friend. Breitung begged Phillips not to report

---

[1] Rose Beitler is also referred to as Rose Sialana in the record.

Beitler to Child Protective Services (CPS). Phillips did not file a CPS report, but he did tell his wife about the incident, which she reported to CPS.

During an August 13 meeting with Jessica Chaney, Breitung's DSHS social worker, Beitler explained that she had "some serious concerns" about Phillips. The next day, August 14, DSHS placed Breitung with South King County Youth Shelter (SKCYS).

Around the same time, Beitler also met with Bernie Bell, CCI's associate director, and reported that Phillips had inappropriately shared information about Breitung with his wife. CP at 946-47. On August 14, Bell filed a critical incident report with CCI, documenting her conversation with Beitler and Beitler's concerns about Breitung's relationship with Phillips. CCI director James also filed a critical incident report, noting that Phillips "broke confidentiality" by disclosing information about Breitung to his wife. CP at 956. As remedial measures, on August 30, CCI (1) discharged Breitung as a CCI client and recommended that Breitung attend treatment at another agency, and (2) instructed Phillips to have no further contact with Breitung of any kind. Following her discharge from CCI, Breitung began counseling with Andrea Venier at Auburn Youth Resources.

## II. DEPENDENCY PETITION; BREITUNG'S PLACEMENT WITH PHILLIPS FAMILY

Meanwhile, on August 19, DSHS filed a dependency petition on grounds that it was contrary to Breitung's welfare to remain in or to return home to her mother. On August 19, the juvenile court held a dependency hearing, ruling that Breitung should not return to her parents and that she should remain in shelter care because she had no parent, guardian, or custodian available to provide for her. Around this same time, DSHS assigned Gabrielle Rosenthal as Breitung's social worker.

Breitung repeatedly expressed to Rosenthal her desire to live with the Phillips family. Breitung described the Phillips as a positive, supportive couple who provided her with a safe and stable environment. Rosenthal noted potential professional ethical problems given the counselor-patient relationship between Breitung and Phillips. Nevertheless, Rosenthal contacted the Phillips and explained the steps they needed to take to be considered a placement resource for Breitung.[2] Phillips disclosed a prior conviction for attempted possession of stolen property. Rosenthal ran a criminal background check, which confirmed Phillips' prior conviction and no other conviction or negative action. Rosenthal also searched DSHS's database to determine whether any reports or allegations of child abuse, neglect, or endangerment had been filed against the Phillips; she found none.

Rosenthal also asked Philips to check whether any professional or ethical rule prevented him from serving as a placement resource for Breitung; Phillips responded that he checked and did not find any rule that prevented him from doing so. Rosenthal, however, did not independently contact CCI to inquire about a potential breach of professional or ethical rules that could stem from placing Breitung with Phillips.

Around this same time, on September 16, the juvenile court held a shelter care hearing. Rosenthal reported to the court that (1) she had not seen Breitung display any particular attachment to Phillips, (2) she (Rosenthal) had talked mostly with Phillips' wife, (3) Breitung had a good relationship with the Phillips family, and (4) she (Rosenthal) did not have any concerns about Breitung's proposed placement with the Phillips family.

---

[2] DSHS required the Phillips to disclose whether they had been convicted of a crime; been accused of sexual abuse, physical abuse, neglect, abandonment, or exploitation of a child; and whether either had any protection orders or restraining orders entered against them.

On September 21, Breitung's new counselor, Venier, submitted a written report to Auburn Youth Resources, expressing her ethical concerns about Breitung's relationship with Phillips. Three days later, on September 24, Rosenthal spoke with Venier, who (1) did "not feel that there [was] an inappropriate relationship" between Breitung and Phillips, and (2) reported Breitung's desire to live with Phillips and his wife, whom Breitung "fe[lt] would be a great support." CP at 637.

On September 30, Breitung's mother filed an objection to Breitung's placement with the Phillips family. Breitung's mother expressed concerns about Breitung's relationship with Phillips given that Breitung had "told people of dreams involving [Phillips]" and that Breitung wanted to spray perfume in his office so that he would think of her. CP at 673. In response, the juvenile court ordered Breitung to remain in DSHS custody and scheduled a hearing for November 3.

On October 15, Rosenthal told Breitung that she would approve Breitung's placement with the Phillips family. Breitung moved in with the Phillips family the next day. Shortly thereafter, Phillips started touching Breitung inappropriately while she was making dinner at the Phillips' home; Breitung ignored him. A few days later, while watching a movie, Phillips started touching Breitung and tried to kiss her; she went back to her room and felt "super awkward" because she wanted to stay with the Phillips family and did not "want [her placement] to be ruined." CP at 710. The next time Phillips tried to kiss Breitung, she did not turn away. After that incident, they kissed "every now and again." CP at 710. And it was not before long before they "just ended up having sex." CP at 711.

On November 3, the juvenile court held a hearing to address Breitung's mother's contested placement of Breitung with the Phillips family. Breitung's mother expressed concerns about Breitung's placement with the Phillips and opined that Breitung should be in a more "neutral setting" where she did not have a lot of confused emotions and an unhealthy attachment to the placement. CP at 539. Rosenthal did not mention Venier's concerns about Breitung's placement with Phillips; instead, she recommended the Phillips placement. Breitung told the court that things were "going really well" with the Phillips family and that this placement was the "best one" she had ever had. CP at 440. The juvenile court stated it had no concerns about the placement, noting that while there is always a risk of improper attachment between an older foster child and a foster parent, such risk was minimal. The juvenile court signed and entered the order placing Breitung with the Phillips family.

On November 16, Phillips' wife called Rosenthal, informing Rosenthal that she and Phillips would be filing for divorce and that Phillips would be moving out of the home because Phillips had told her that he was having an affair. Breitung then told Phillips' wife about her sexual relationship with Phillips. On November 24, Breitung disclosed her sexual relationship with Phillips to her Celebrate Recovery group. The next day, Breitung moved out of the Phillips' home. On November 25, Phillips' wife reported child sexual abuse to DSHS, and Rosenthal placed Breitung back into the SKCYS group home. On November 30, CCI terminated Phillips from his position as counselor.

## III. Litigation

Breitung sued the State of Washington for negligent placement and negligent failure to protect her; she also sued CCI for negligent hiring, training, and supervision, negligent failure to protect, and corporate negligence. CCI moved for summary judgment on grounds that (1) there was no evidence that CCI was negligent in hiring, training, or supervising Phillips; and (2) CCI owed no duty to monitor Phillips' conduct outside the scope of his employment. The next month, Breitung amended her complaint to name DSHS as a party, alleging negligent investigation and negligent placement.

Responding to CCI's motion for summary judgment, Breitung argued it was foreseeable that an inappropriate sexual relationship would develop between her and Phillips. In support, Breitung submitted a declaration from Sharon Fenton, Clinical Director of Assessment and Treatment Associates, which stated that (1) chemical dependency agencies should be aware of "'boundary' issues"[3] where chemical dependency professionals' ability to empathize and to identify with clients can lead to improper relationships and conflicts of interest; (2) CCI should not have permitted Phillips to encourage or to direct clients to a separate Celebrate Recovery program because it could create a conflict of interest; and (3) CCI violated the standard of care in supervising and retaining Phillips and terminating Breitung's treatment instead of terminating Phillips' employment for disclosing personal information about Breitung to his wife and for admitted inappropriate social interaction with Breitung outside the counselor-patient relationship. Breitung also submitted excerpts of Beitler's deposition, in which Beitler stated she had reported

---

[3] CP at 1011.

to CCI her concerns of an "inappropriate relationship" between Phillips and Breitung. CP at 270.

DSHS moved for partial summary judgment asserting (1) it was statutorily immune for its placement recommendations to the juvenile court given that the juvenile court had ordered Breitung's placement with the Phillips family; (2) the juvenile court's placement decision was a superseding, intervening act that severed DSHS's liability; and (3) the doctrine of judicial estoppel prevented Breitung from recovering damages in this lawsuit for the placement decision.

Breitung responded to DSHS's motion for partial summary judgment asserting that Rosenthal's investigation of the Phillips family was negligent, and that Rosenthal had failed to inform the juvenile court about her conversations with Venier in which Venier had expressed concerns about Breitung's and Phillips' relationship. Breitung also submitted the declaration of Barbara Stone, statewide director of all foster and childcare licensing in DSHS's Children's Administration. Stone had reviewed Breitung's DSHS file and opined that DSHS's placement of Breitung in the Phillips' home violated state law and DSHS' own policies. Stone stated that a child's expressed preference for a particular placement does not negate DSHS's duty to investigate. Stone also opined that Rosenthal's home study of Phillips did not comply with DSHS policies because she (Rosenthal) did not complete her placement checklist, did not fill out a placement agreement at the time of placement, and did not investigate "boundary issues" between Phillips and Breitung, such as Phillips' giving Breitung his personal cell phone number. CP at 744. Stone further declared that although Rosenthal recognized an ethical conflict for Phillips to have custody of Breitung, Rosenthal did not personally check with CCI about this conflict, relying instead on Phillips' representation that ethical conflict was not a problem.

8

No. 45123-9-II

At the summary judgment hearing, the superior court orally ruled that the main issue with Breitung's claim against CCI was foreseeability: Because Breitung was placed with the Phillips family at her request, Phillips' subsequent sexual conduct was not foreseeable by CCI, especially where CCI had terminated Phillips' counseling relationship with Breitung two months before the sexual contact occurred at Phillips' home. Finding no evidence of foreseeability, the superior court granted CCI's motion for summary judgment. The superior court also orally ruled that (1) RCW 4.24.595[4] has retroactive effect under these circumstances, which provided DSHS with immunity from Breitung's lawsuit; (2) the juvenile court's order placing Breitung with Phillips also cut off DSHS's liability; and (3) Breitung failed to present an issue of material fact to warrant a jury trial. The superior court entered a written order granting DSHS's motion for partial summary judgment, dismissing all of Breitung's claims against DSHS arising from Breitung's placement in the Phillips' home. The superior court also granted CCI's motion for summary judgment, dismissing all of Breitung's claims against CCI with prejudice.[5] Breitung timely appeals.

---

[4] The record incorrectly references "[RCW 4.]24.959." The correct citation is RCW 4.24.595. *See* Report of Proceedings at 51.

[5] Based on the parties' stipulation, the trial court stayed the following additional claims pending Breitung's appeal: the State of Washington's negligent failure to protect Breitung, negligent investigation into reports of abuse and neglect by Breitung's parents, and negligent placement of Breitung with her mother.

No. 45123-9-II

## ANALYSIS

### I. Summary Judgment for CCI

Breitung argues that the superior court erred in granting CCI's motion for summary judgment because (1) CCI owed Breitung a legal duty to prevent foreseeable harm, and (2) Breitung presented sufficient evidence below to establish a genuine issue of material fact about the foreseeability of Phillips' sexual abuse to overcome dismissal of her negligent hiring, supervision, and retention claims.[6] We disagree.

### A. Standard of Review

We review summary judgment de novo, engaging in the same inquiry as the trial court and viewing the facts and any reasonable inferences therefrom in the light most favorable to the non-moving party, here, Breitung. *Associated Petrol. Prods., Inc. v. Nw. Cascade, Inc.*, 149 Wn. App. 429, 433-34, 203 P.3d 1077 (2009). Summary judgment is proper when no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. *Diamond B Constructors, Inc. v. Granite Falls Sch. Dist.*, 117 Wn. App. 157, 160-61, 70 P.3d 966 (2003). "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). To defeat summary judgment, the non-moving party must assert specific facts and cannot rely on mere speculation. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

---

[6] Breitung does not specifically challenge the superior court's ruling on her negligent hiring, retention, and supervision claims individually on appeal, instead, she conflates negligent hiring, supervision, and retention and "collectively refers to [her claims as] negligent supervision" to challenge the issues of duty, foreseeability and proximate cause. Br. of Appellant at 23 n.9.

## B. Negligent Hiring, Supervision, and Retention Claims

Breitung argues that CCI owed her a legal duty to prevent foreseeable harm and that she presented sufficient evidence to establish a genuine issue of material fact as to the foreseeability of Phillips' sexual abuse to overcome summary judgment on her negligent hiring, supervision, and retention claims. This argument fails.

It is well settled that an essential element in any negligence action is the existence of a legal duty that the defendant owes to the plaintiff. *Christensen v. Royal Sch. Dist. No. 160*, 156 Wn.2d 62, 66, 124 P.3d 283 (2005). An individual or entity generally has no legal duty to prevent a third party from intentionally harming another unless a special relationship exists between the defendant and either the third party or the foreseeable victim of the third party's conduct. *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 43, 929 P.2d 420 (1997). Foreseeability limits the scope of duty owed to a plaintiff. *Christen v. Lee*, 113 Wn.2d 479, 492, 780 P.2d 1307 (1989). A plaintiff's harm must be reasonably perceived as within the general field of danger that should have been anticipated. *Id.* A plaintiff alleging sexual misconduct must show that such conduct was "reasonably foreseeable," and such foreseeability must be based on more than speculation or mere conjecture. *Kaltreider v. Lake Chelan Cmty. Hosp.*, 153 Wn. App. 762, 766-67, 224 P.3d 808 (2009). In general, foreseeability is a question for the jury unless the circumstances of the inquiry are "'so highly extraordinary or improbable as to be wholly beyond the range of expectability.'" *Shepard v. Mielke*, 75 Wn. App. 201, 206, 877 P.2d 220 (1994) (quoting *McLeod v. Grant County Sch. Dist. No. 128*, 42 Wn.2d 316, 323, 255 P.2d 360 (1953)).

1. Negligent hiring; negligent retention

An employer may be liable to a third person for negligence in hiring or retaining an employee who is incompetent or unfit. *Peck v. Siau*, 65 Wn. App. 285, 288, 827 P.2d 1108 (1992). To prove negligent hiring or retention, a plaintiff must demonstrate that (1) the employer knew or, in the exercise of ordinary care, should have known of its employee's unfitness at the time of hiring or retaining such individual; and (2) the negligently hired or retained employee proximately caused the plaintiff's injuries. *Carlsen v. Wackenhut Corp.*, 73 Wn. App. 247, 252-53, 868 P.2d 882 (1994); *Peck*, 65 Wn. App. at 288-89. Negligent hiring and negligent retention claims share the same elements; the difference is the timing of the employer's alleged negligence. *Peck*, 65 Wn. App. at 288. With negligent hiring, the negligence occurs at the time of hiring; with negligent retention, the negligence occurs during the course of employment. *Id.*

Breitung mistakenly relies on *Rucshner*[7] for the proposition that CCI's negligent hiring of Phillips "enabled or facilitated" the foreseeable consequence of his pattern of violating ethical boundaries and engaging in sexual relations with her because the facts in *Rucshner* are distinguishable.[8] Br. of Appellant at 32 (emphasis omitted). In *Ruschner* we held that a residential security system company did not perform its contractual duty to conduct a background check before hiring an employee with a criminal record, who raped a girl when

_____

[7] *Ruschner v. ADT Sec. Sys. Inc.*, 149 Wn. App. 665, 686-88, 204 P.3d 271 (2009).

[8] In *Ruschner*, a security company hired Michael Robinson, who raped a 14-year-old after he met her making sales calls for the company at her home. *Ruschner*, 149 Wn. App. at 668. The security company had a contractual duty to perform criminal background checks on its employees and had failed to conduct a criminal background check on Robinson that would have revealed his criminal history of first degree criminal impersonation, third degree theft, possession of drug paraphernalia, and possession of marijuana. *Id.* at 673, 682.

making a sales call to her home. *Ruschner*, 149 Wn. App. at 681, 682. We reversed the superior court's grant of summary judgment to the security company and reinstated the plaintiff's negligent hiring action. *Id.* at 688. Here, in contrast, Breitung failed to demonstrate that CCI knew or should have known of Phillips' unfitness at the time it hired him.

On the contrary, the record shows CCI verified that Phillips was a certified counselor, a qualification required for the job. Further, CCI's director, James, screened Phillips' job application materials, interviewed Phillips, and contacted Phillips' references. One of the conditions of CCI employment was passing a criminal background check to ensure the job applicant did not have any charges for child abuse or solicitation of minors. Unlike the company in *Ruschner*, which completely failed to conduct a background check, CCI did run a background check on Phillips, which revealed only a 1995 misdemeanor conviction for attempted possession of stolen property. At the time of hiring, none of CCI's inquiries revealed any hint of Phillips' propensity for sexual abuse of minor. Thus, even taking the evidence in the light most favorable to Breitung, the record does not support that CCI knew or should have known about Phillips' unfitness to serve as a juvenile counselor at the time it hired him. We hold, therefore, that the superior court did not err in dismissing Breitung's negligent hiring claim on summary judgment.

Breitung bases her negligent retention claim on CCI's failure to terminate Phillips' employment when CCI learned that Phillips had divulged confidential information about Breitung to his wife. But even taken in the light most favorable to Breitung, the facts she presented did not satisfy the elements required to prove her negligent retention claim. The record shows that during the course of Phillips' employment, CCI had no reason to know about his propensity for sexual abuse. On the contrary, during the course of his employment, CCI

learned only that Phillips had inappropriately shared confidential information about Breitung to his wife in August. And CCI responded to this impropriety by (1) filing a critical incident report, (2) asking Phillips to provide a chronology of events around his relationship with Breitung, (3) requesting that Breitung transfer to another treatment agency, (4) reporting the incident to the Department of Health, (5) telling Phillips it had informed Beitler that she could file a complaint against him in her capacity as Breitung's temporary guardian, and (6) ordering Phillips not to have any further contact with Breitung, her caregivers, or any other individuals involved in her care and treatment. At that point in August, CCI had no reason to foresee that Phillips would disobey this order, that Breitung would later move in with Phillips, or that he would engage in a sexual relationship with Breitung in his home. But in November, when CCI later learned about Phillips' sexual relationship with Breitung, CCI promptly terminated Phillips from his position as counselor.

Even taken in the light most favorable to Breitung, her evidence failed to show that CCI knew or should have known about Phillips' unfitness to serve as a juvenile counselor before hiring him or during his period of employment. We hold, therefore, that the superior court did not err in dismissing Breitung's negligent hiring and retention claims on summary judgment.

## 2. Negligent supervision

Breitung further argues that (1) CCI was aware Phillips had "violated therapeutic boundaries" before it discharged her as a client; and (2) therefore, Phillips' later sexual abuse of her, after her discharge, was foreseeable. Br. of Appellant at 25. Again, even taking the evidence in the light most favorable to Breitung, she does not show that Phillips' later sexual abuse of her, after CCI severed their counseling relationship, was foreseeable.

14

A negligent supervision claim requires showing that (1) an employee acted outside the scope of his or her employment; (2) the employee presented a risk of harm to other employees; (3) the employer knew, or should have known in the exercise of reasonable care, that the employee posed a risk to others; and (4) the employer's failure to supervise was the proximate cause of injuries to other employees. *Briggs v. Nova*, 135 Wn. App. 955, 966-67, 147 P.3d 616 (2006) (citing *Niece*, 131 Wn.2d at 48-49), *aff'd*, 166 Wn.2d 794, 213 P.3d 910 (2009). Given Breitung's argument, we focus on the foreseeability factor; we conclude that the circumstances in this case were "'so highly extraordinary'" that they were "'beyond the range of expectability,'" which does not create an issue for the jury. *Shepard*, 75 Wn. App. at 206 (quoting *McLeod*, 42 Wn.2d at 323).

Citing *Smith*[9] and *Kaltreider*, CCI contends that an employee's sexual conduct is not reasonably foreseeable and an employer does not have a duty to guard against the possibility that an employee is an undisclosed sexual predator. The *Smith* and *Kaltreider* plaintiffs were both victims of sexual abuse in a hospital: In *Smith*, a nursing assistant engaged in sexual behavior with a patient in the psychiatric unit; in *Kaltreider*, a registered nurse engaged in sexual behavior with a patient in an alcohol dependency unit. *Smith*, 144 Wn. App. at 540-41; *Kaltreider*, 153, Wn. App. at 764. The *Smith* court held that the employee's sexual encounter with a patient in the workplace was legally insufficient to support a cause of action for negligent supervision, absent a showing that the employer knew or should have known of the employee's potential for sexual abuse. *Smith*, 144 Wn. App. at 544. The *Kaltreider* court held that the employee's

---

[9] *Smith v. Sacred Heart Med. Ctr.*, 144 Wn. App. 537, 184 P.3d 646 (2008).

actions were not foreseeable *absent any evidence* that the employee's conduct was known or reasonably foreseeable to the employer. *Kaltreider*, 153 Wn. App. at 767.

Like the *Smith* and *Kaltreider* plaintiffs, Breitung presented no evidence of the foreseeability of Phillips' later sexual conduct with her in his home, well after CCI terminated their counseling relationship. Rather, she provided Bell's critical incident report, filed with CCI on August 14, which included "concerns" about Phillips' disclosing confidential information about Breitung to his wife and Beitler's expressed concern about Phillips' relationship with Breitung. CP at 950. Similarly, in her deposition, Beitler testified only that she had expressed "concerns"[10] to CCI about an "inappropriate relationship" between Phillips and Breitung, such as Phillips' disclosing Breitung's confidential information to his wife and that Breitung had been spraying perfume in Phillips' office, which behavior was "'not normal for an older man'" who was "'supposed to be [Breitung's] counselor.'" CP at 947 (emphasis omitted).

Breitung also presented the deposition of Fenton, Clinical Director of Assessment and Treatment Associates. Fenton testified in general that (1) chemical dependency agencies should be aware of "'boundary' issues"[11] between chemical dependency professional and their clients because these can lead to improper personal relationships and conflicts of interest; (2) CCI should not have permitted Phillips to encourage or to direct clients to a separate Celebrate Recovery program because it could create a conflict of interest; (3) it is not the best practice in substance abuse treatment to assign male counselors to adolescent girls and, if so, such agencies should train and monitor employees to avoid giving out their personal phone numbers, to restrict

---

[10] CP at 948.

[11] CP at 1011.

their contact with clients outside the agency, and to recognize flirtatious behavior; (4) CCI violated the standard of care in supervising and retaining Phillips when it terminated Breitung's treatment instead of terminating Phillips' employment after he admitted having disclosed personal information about Breitung to his wife and admitted to engaging in "inappropriate conduct"[12] with Breitung—Phillips' giving Breitung his cell phone number, providing her with transportation, introducing her to his wife, and inviting her to his church fellowship group; and (5) a counselor's duty to a client extends beyond termination of the client because the Washington Administrative Code (WAC) prohibits health care providers from having sexual relationships with clients for two years after terminating a therapy relationship.[13]

Most of Fenton's points emphasized the potential for an improper relationship to develop between a male substance abuse counselor and an adolescent female client and proposed appropriate training to minimize such problems. But none of her points showed (1) how CCI's supervision of Phillips could have prevented his later sexual conduct with Breitung at his home, long after CCI discharged Breitung as a client and forbade Phillips from having any further contact with her; or (2) how Phillips' later sexual conduct with Breitung was foreseeable.

Viewing the evidence in the light most favorable to Breitung, we hold that she did not present sufficient evidence to create a genuine issue of material fact about whether Phillips' later

---

[12] CP at 1012.

[13] WAC 246-16-100(3) provides that a health care provider "shall not engage, or attempt to engage, [in sexual misconduct] with a former . . . client . . . within two years after the provider-patient/client relationship ends." The definition of a "health care provider" for purposes of this regulation includes chemical dependency professionals, mental health counselors, mental health counselor associates, social workers, and social work associates. WAC 246-16-020; former RCW 18.130.040(2)(a)(xi), (xvi) (2009).

sexual abuse of Breitung was foreseeable or how this abuse was connected to its earlier supervision of him when he was her CCI counselor. We hold, therefore, that the superior court did not err in dismissing Breitung's negligent supervision claim on summary judgment.

## II. PARTIAL SUMMARY JUDGMENT FOR DSHS

Breitung next argues that the superior court erred in granting partial summary judgment to DSHS because (1) the juvenile court's November 2009 placement order was not a superseding cause that absolved DSHS from liability, (2) RCW 4.24.595 does not immunize DSHS from Breitung's negligent investigation claim, and (3) Breitung was not judicially estopped from pursuing her sexual abuse claim based on her November 2009 statements to the juvenile court asking to be placed with the Phillips family. DSHS responds that it is liable for negligent investigation only if Breitung produced admissible evidence that DSHS proximately caused the allegedly harmful placement and that DSHS failed to disclose a material fact to the juvenile court. We agree with DSHS that Breitung did not present evidence to show that DSHS's allegedly negligent investigation was the proximate cause of her placement. Even taking the facts in the light most favorable to Breitung, we hold that she failed to establish a causal connection between the information DSHS brought to the dependency court and Phillips' sexual abuse of her after the court placed her with his family. Thus, we do not address her separate immunity and judicial estoppel arguments.

A claim for negligent investigation arises when the State conducts a biased or incomplete investigation that results in a harmful placement decision. *M.W v. Dep't of Soc. & Health Servs.*, 149 Wn.2d 589, 591, 70 P.3d 954 (2003). To prevail on a claim for negligent investigation, the claimant must prove that the allegedly faulty investigation was the proximate cause of the

harmful placement. *Petcu v. State*, 121 Wn. App. 36, 56, 86 P.3d 1234 (2004). In a negligent investigation claim, proximate cause includes two elements: cause in fact and legal cause. *Ruschner*, 149 Wn. App. at 686. Cause in fact refers to the actual, "but for," cause of injury, which involves a determination of some physical connection between an act and an injury that is generally left to the jury. *Id.* Legal causation rests on policy considerations about how far the consequences of the defendant's acts should extend; and it focuses on whether, as a matter of policy, the connection between the ultimate harm and the defendant's act is too remote or insubstantial to impose liability. *Id.* at 687. In a lawsuit based on negligent investigation, a caseworker may be legally responsible for a child's placement if the court has been deprived of a material fact as a result of the caseworker's faulty investigation. *See Tyner v. Dep't of Soc. & Health Servs.*, 141 Wn.2d 68, 86, 1 P.3d 1148 (2000). Otherwise, court intervention operates as a superseding intervening cause that cuts off the caseworker's and his or her agency's liability. *Tyner*, 141 Wn.2d at 88 (no-contact order operates as superseding intervening cause, cutting off agency's liability).

Breitung argues that the November 2009 court placement order was not a superseding cause that absolved DSHS from liability because she presented evidence that her DSHS caseworker, Rosenthal, withheld material information from the court, namely that Breitung's new mental health counselor, Venier, had expressed concerns about Breitung's placement with Phillips. Stone, who testified in support of Breitung's summary judgment motion, had reviewed Breitung's DSHS file and opined that DSHS's proposed placement of Breitung in the Phillips' home violated state law and DSHS's own policies. Stone further opined that Rosenthal's home study of the Phillips family was not in compliance with DSHS policies because Rosenthal did

not complete her placement checklist, did not fill out a placement agreement at the time of placement, and did not investigate Phillips' counselor-patient "boundary issues." CP at 744. Stone stated that Rosenthal recognized it was an ethical conflict for Phillips to have custody of Breitung, that Rosenthal did not personally check with CCI about the conflict, and that she instead relied on Phillips' representation that it was not a problem. Further, although Venier had told Rosenthal in September that she was concerned about Breitung's relationship with Phillips and Breitung's desire to live with Phillips and his wife, Rosenthal did not relate to the court any of her conversation with Venier. Stone also stated that a child's expressed preference for a particular placement does not negate DSHS's duty to investigate.

The record shows, however, that DSHS's concerns about Phillips were brought to the juvenile court's attention.[14] The record does not show that DSHS withheld from the juvenile court any material fact it had gathered from its investigation of the Phillips family. In the end, there were few placement options available for Breitung, and the juvenile court placed Breitung with the Phillips family. Accordingly, there was no genuine issue of material fact about whether Rosenthal's allegedly negligent investigation proximately caused Breitung's placement with the

---

[14] For example, the juvenile court was aware of Breitung's mother's objection to Breitung's placement with the Phillips family, which matter it addressed at the November 3 hearing. Breitung's mother's objection included: Breitung's telling people that she had dreams about Phillips and wanted to spray perfume in his office so he could think of her; her (Breitung's mother's) belief that Breitung had an unhealthy attachment to Phillips; and her (Breitung's mother's) opinion that placing Breitung with him and his wife would not be stable and would lead to problems. Rosenthal told the juvenile court that she did not see any particular attachment between Breitung and Phillips; but Rosenthal did not tell the court that Venier had expressed concerns about Breitung's placement with Phillips. Nevertheless, the court had already heard similar concerns from Breitung's mother and had addressed them at the hearing.

No. 45123-9-II

Phillips family. We hold that the superior court did not err in ruling that the November 2009 court placement order was a superseding cause that absolved DSHS from potential liability.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, J.

We concur:

Bjorgen, A.C.J.

Lee, J.

21